UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GREGORY GOODE, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 2:25-CV-22 JD |

**OPINION AND ORDER**

Plaintiff Gregory Goode protectively applied for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning in October 2021. His claim was rejected, leading to a review by an Administrative Law Judge ("ALJ"), who concluded that Plaintiff was not disabled. The Appeals Council later denied his request for review, and Plaintiff now seeks judicial review in this Court. For the reasons below, the Court will remand the case to the Social Security Administration for further proceedings.

**A. Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th

Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**B. Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## C. The ALJ's Decision

In finding that Plaintiff was not disabled, the ALJ employed the customary five-step analysis. At step two, she found that Plaintiff suffered from the following severe impairments: "chronic obstructive pulmonary disease (COPD); obesity; osteoarthritis; degenerative disc disease of the lumbar spine with mild disc bulge; and mild osteoarthritis bilateral knees." (ALJ's Decision, R. at 19.) At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of [a Listing]." (*Id.*, R. at 21.)

The ALJ also recounted Plaintiff's testimony at the November 2023 hearing. (*Id.*, R. at 23.) As relevant here, the ALJ noted that Plaintiff is 5'9" and weighs 260 pounds. He stays in a house with his brother and fiancé. According to Plaintiff, he cannot work due to a limited ability to bend over, and severe pain in his back and right leg, and sometimes in his left leg. He testified that he was in physical therapy for a year but that it was not helping at the pace they wanted. Plaintiff said that he received injections in his back but they were not effective and he did not want to have surgery because it was only going to be a temporary fix and could make his symptoms worse. He alleged that his medications made him drowsy and sleepy, drained his energy, and caused anxiety and dry mouth.

Plaintiff testified that he could walk and stand for five minutes, sit for about the same time without moving to a different position, and could lift up to 20 pounds. He stated he does not do any household chores other than wiping down surfaces. Plaintiff told the ALJ that he could not do a seated job because he cannot sit for too long without having to lie down due to pain shooting down his leg. (*Id.*)

4

Upon questioning by his counsel, Plaintiff acknowledged that his medications sometimes help with his symptoms. Nonetheless, he said he cannot take out the garbage or mow the grass and has difficulty bending at the waist and knees. (*Id*.)

In determining Plaintiff's residual functional capacity ("RFC"),[1] the ALJ found that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical and other evidence in the record." (*Id*., R. at 23.) The ALJ concluded that Plaintiff has the RFC to perform

> light work[2] . . . except: he can stand and or walk with normal breaks for a total of 4 hours in an 8-hour workday and sit with normal breaks for a total of 6 hours in an 8-hour workday. He can occasionally climb ramps and stairs. He can never climb ladders, ropes and scaffolds. He can occasionally balance, stoop defined as bending at the waist, kneel, crouch defined as bending at the knees and crawl. He is to avoid concentrated exposure to humidity and concentrated dust, odors, fumes and other pulmonary irritants. He is to avoid unprotected heights and dangerous machinery. He can frequently use foot controls.

(*Id.*, R. at 21–22.)

The ALJ posed a hypothetical question to the vocational expert ("VE") based on his RFC findings. The VE testified that there are jobs in the national economy in significant numbers that a hypothetical person with Plaintiff's RFC could perform: small parts assembler (18,000 jobs), mail clerk (17,600 jobs), and merchandise marker (136,000 jobs). (*Id.*, R. at 29.) Relying on the VE's testimony, the ALJ concluded "that, considering [Plaintiff's] age, education, work

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

5

experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.*) As a result, the ALJ found Plaintiff to be not disabled.

**C. Discussion**

In his appeal, Plaintiff raises four arguments. Plaintiff submits that the ALJ's inclusion of occasional stooping in the RFC contradicts the consultative examiner's uncontested finding of limited lumbar flexion, which would preclude stooping. Next, according to Plaintiff, the ALJ improperly interpreted the electromyogram (EMG) and nerve conduction findings, when he should have consulted a medical expert to explain their meaning. In addition, he contends that the ALJ failed to address evidence showing significant sitting limitations and did not build a logical bridge to support the RFC finding that he can sit for six out of eight hours. Finally, Plaintiff argues that the ALJ erred in evaluating his subjective symptoms by relying solely on objective evidence, drawing negative inferences from a lack of treatment without inquiry, and neglecting required regulatory factors, such as Plaintiff's activities of daily living.

The Court is not persuaded by Plaintiff's first two arguments. Although stooping is proscribed by Plaintiff's uncontested inability to fully bend at the waist, none of the jobs identified by the VE require stooping, thus foreclosing Plaintiff's argument. *See Gregory v. Berryhill*, No. 15-cv-905-JPG-CJP, 2017 U.S. Dist. LEXIS 22373, at *30-31 (S.D. Ill. Feb. 16, 2017) ("The Seventh Circuit has repeatedly held that an ALJ's conclusions are not undermined when postural limitations are omitted from an RFC but those limitations are not necessary for the jobs presented by the VE.") (citing *Sienkiewicz v. Barnhart*, 409 F.3d 798, 803, 119 Fed. Appx. 811 (7th Cir. 2005)); *Aaron P. v. O'Malley*, No. 22-cv-6254, 2024 U.S. Dist. LEXIS 133297, at

6

*18–19 (N.D. Ill. July 29, 2024) ("Here, the ALJ found plaintiff capable of frequent stooping. Even if the ALJ had found Plaintiff capable of only occasional stooping or crouching (or indeed, even no stooping or crouching) such a finding would not affect the occupational base because the jobs cited by the vocational expert [] do not require any stooping or crouching.").

As for the EMG and nerve conduction study, the ALJ did not interpret those findings, but merely restated Dr. Aleksandr Goldvekht's conclusion that the EMG "was abnormal, and contained findings consistent with a right tibial motor mixed demyelinating and axonal neuropathy but no evidence of lumbosacral radiculopathy was noted." (ALJ's Decision, R. at 24; *see also* R. at 501.) This case is unlike *McHenry v. Berryhill*, 911 F.3d 866 (7th Cir. 2018), where the ALJ impermissibly compared the MRI reports "to determine if [the claimant's] back impairment in [the earlier MRI] existed at the same level of severity during the relevant period." *Id*. at 871. In short, Plaintiff's argument for remand on this ground lacks merit.

That said, the Court concludes that Plaintiff's last two arguments, which are closely related, warrant remand to the extent that Plaintiff contends that the ALJ failed to explain, as required by SSR 96-8p, how she determined that Plaintiff can sit for a total of 6 out of 8 hours with normal breaks, and drew negative inferences about Plaintiff's failure to pursue further medical treatment without considering possible reasons for his noncompliance.

**(1)** *Plaintiff's Sitting Limitation*

An ALJ is charged with determining an individual's RFC, meaning "what an individual can still do despite his or her limitations." SSR 96-8p. The ALJ makes that determination based on medical evidence as well as other evidence, including testimony by the claimant. *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). In making a proper RFC

7

determination, an ALJ must consider all the relevant evidence in the record, even evidence relating to limitations that are not severe. *Id.*; *see* 20 C.F.R. § 404.1529(a). The ALJ must also "articulate in a rational manner the reasons for his assessment of a claimant's residual functional capacity," *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009), in a way that builds "an accurate and logical bridge from the evidence to the conclusion." *Giles v. Astrue,* 483, 487 (7th Cir. 2007).

> An ALJ's failure to comply with SSR 96-8p's requirements is a sufficient basis, by itself, for us to reverse an ALJ's decision. *See, e.g., Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("Contrary to SSR 96–8p, however, the ALJ did not explain how he arrived at these conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision."); *Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020) (explaining that although an ALJ's failure to comply with SSR 96-8p "does not necessarily require remand," we must be satisfied that an ALJ considered SSR 96-8p's requirements and produced a decision supported by substantial evidence). But we may affirm an ALJ's decision that does not conform with SSR 96-8p's requirements if we are satisfied that the ALJ "buil[t] an accurate and logical bridge from the evidence to her conclusion." *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (quotation omitted). Essentially, an ALJ's RFC analysis "must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

*Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022).

Plaintiff was involved in a car accident in December 2021, which he claims exacerbated his difficulty with sitting for prolonged periods. Following the accident, he saw Dr. Goldvekht nearly monthly from January 2022 through July 2022, reporting each time that, among other things, "he had discomfort when sitting for any length of time." (R. at 485, 488, 492, 494, 502, 505, 507.) At the initial visit, Dr. Goldvekht prescribed naproxen and Flexeril. During subsequent visits, he ordered an EMG and an MRI, referred Plaintiff to pain management, instructed him to continue with physical therapy and to stay off work, added an ibuprofen prescription, and eventually turned over his care to pain management altogether.

In his October 4, 2022, Function Report, Plaintiff stated that he could not sit for more than an hour without severe pain in his back, leg, and shoulders. (R. at 229, 236.)

On December 30, 2022, agency examining consultant Dr. Siddiqui examined Plaintiff, noting his medical history and Plaintiff's claim that he "has difficulty sitting or standing in one place for more than 10 minutes at a time" due to back pain. (R. at 414.) Dr. Siddiqui summarized Plaintiff's musculoskeletal system as follows:

> [n]o kyphosis and no scoliosis is appreciated—Tender lumbar spine. Limited ROM of lumbosacral spine (please see ROM chart for details). No muscle spasms and no muscle wasting is appreciated. He is partially able to squat with difficulty.

On February 22, 2023, Plaintiff's primary care provider, Nurse Practitioner ("NP") Jeremy Michaelis filled out an RFC Questionnaire, stating among other things that Plaintiff could not sit longer than an hour at a time. (R. at 421–22.)

Finally, Plaintiff testified at the hearing that he can sit for 5 minutes before he has to move to a different position. (R. at 49.)

In her decision, the ALJ found that Plaintiff's severe impairments included both obesity and degenerative disc disease of the lumbar spine with a mild disc bulge. (R. at 19.) The ALJ further determined that the limitations assessed by NP Michaelis, "most notably to sitting and standing each less than two hours in an eight-hour workday, . . . are not supported by the overall record." (R. at 26.) The ALJ observed that, in particular, NP Michaelis's own examination did not support such limitations. (*Id*. (citing R. at 570, 574, and 577).) While this may be a valid reason to discount Plaintiff's claim that he may sit for at most an hour, what is missing from this assessment is the ALJ's explanation why she believes Plaintiff can "sit with normal breaks for a total of 6 hours in an 8-hour workday." (ALJ's Decision, R. at 21.) After all, the ALJ did not indicate what evidence she was relying on to reach this conclusion, *cf. Lovelace v. Barnhart*, 187

9

F. App'x 639, 644 (7th Cir. 2006) (finding that while the ALJ's conclusion that the claimant could sit for six hours if he had the opportunity to change positions every 45 minutes was "not as strong as it might have been," it was without error because the ALJ relied on the claimant's doctor's report, which reflected claimant's comment to the doctor that he could "sit for several hours at a time"), nor did she provide a clear path for her reasoning that the Court can follow to discern the validity of the stated reason.

In response, the Commissioner makes only a cursory and conclusory argument, failing to address in any detail the specifics of Plaintiff's claim. The Commissioner insists that Plaintiff is attempting to reverse the burden of proof, but does not explain why the ALJ should be allowed to ignore the requirement that there be a logical bridge between the evidence and conclusion.

What makes this matter worse is that, in discounting Plaintiff's allegations about his inability to sit for long periods, the ALJ drew negative inferences from his failure to follow up on the referral to orthopedics and his discontinuation of treatment at the pain management clinic. It's long established that "an ALJ may not draw negative inferences from a claimant's failure to seek treatment without first considering the individual's explanation." *McHenry v. Berryhill*, 911 F.3d 866, 873 (7th Cir. 2018) (citation omitted)); *see also* SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints."). This case is no exception. The question of how long Plaintiff can sit before needing to change his position is central to the ALJ's decision, and the ALJ compounded the error by dismissing Plaintiff's

allegations as well as NP Michaelis's opinion about Plaintiff's sitting limitations, without first considering possible reasons for his lack of more treatment. This is particularly significant because Plaintiff testified that he received injections in his back but they were not effective. (R. at 49.) While the Commissioner argues that the ALJ did not draw any negative inferences from Plaintiff's failure to seek treatment but "simply reviewed the evidentiary record" (Def.'s Br., DE 14 at 10), this is simply not true. The ALJ's statement regarding Plaintiff's failure to seek treatment is central to her reasoning that Plaintiff is not as limited as he claims to be.

While an RFC determination is subject to harmless error, an error is harmless if, upon examination of the record, the reviewing Court can "predict with great confidence what the result of the remand will be." *Wilder* v. Kijakazi, 22 F.4th 644, 654 (7th Cir. 2022). Yet the Court cannot reach such a conclusion here because of ambiguities in how the ALJ assessed the RFC. Accordingly, the Court will remand this case.

### E. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: March 3, 2026

                                                  /s/ JON E. DEGUILIO
                                                  Judge
                                                  United States District Court